```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

HARRY E. GOULD, JR.,

                    Plaintiff,                14 Civ. 7905

     -against-                                 OPINION

JAPAN PULP AND PAPER (U.S.A.),

                    Defendant.

------------------------------------------X

A P P E A R A N C E S:


          Attorneys for Plaintiff

          DLA Piper LLP
          1251 Avenue of the Americas
          New York, NY 10020-1104
          By:  Jonathan D. Siegfried, Esq.


          Attorneys for Defendant

          BRYAN CAVE LLP
          1290 Avenue of the Americas
          New York, NY 10104
          By:  Chris LaRocco, Esq.
               Steve Stimell, Esq.

          BUSINESS LEGAL PARTNERS
          135 W. Green Street, Suite 100
          Pasadena, CA 91105
          By:  Mark S. Shipow, Esq.
```

**Sweet, D.J.**

Defendant Japan Pulp & Paper (U.S.A.) Corporation ("JP-USA" or the "Defendant") has moved under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to dismiss the Complaint in this action and to compel Plaintiff Harry E. Gould, Jr. ("Gould" or "Plaintiff") to arbitrate his claims, or to stay the action pending arbitration.  Based upon the conclusions set forth below, the motion of JP-USA is granted and Gould is directed to submit his claims to arbitration.

In this action, Gould seeks to recover damages for the breach of his Consulting Agreement which does not contain an arbitration clause.  However, for the reasons set forth below, the Consulting Agreement is connected and collateral to the Stock Purchase Agreement ("SPA") which contains a broad arbitration clause.

**Prior Proceedings**

JP-USA is a paper supply and processing company headquartered in California.  Compl. ¶ 3.  Gould is the President and Chief Executive Officer of Gould Paper Corporation

1

("GPC"), a paper supply and processing company with its headquarters in New York. Id. ¶¶ 3, 8. On April 15, 2010, JP-USA, GPC, and Gould individually, among others, entered into the SPA whereby JP-USA purchased 51% of GPC's common stock. Id. ¶¶ 3, 9; see also Declaration of Akihiko Watanabe, dated October 31, 2014 ("Watanabe Decl."), Ex. 2, excerpts from SPA.

The SPA, contains a "Mediation and Arbitration" section and outlines the parties' agreed-upon forum for resolving disputes. First, the parties must attempt to mediate any disputes between them, which they have done. Watanabe Decl. ¶ 6, Ex. 2, SPA, § 11.14.1. If mediation fails, the SPA states:

> The Parties agree to submit any dispute, controversy or claim ("Dispute") arising out of, relating to or in any way connection [sic] with this Agreement to final and binding arbitration under the [JAMS] Commercial Arbitration Rules . . . .

Id. § 11.14.1.1.

In addition to the SPA, the transaction included the execution of other agreements as well, among them are a shareholder's agreement, an employment agreement, and a credit agreement with accompanying loan documents. Watanabe Decl. ¶ 4.

JP-USA and Gould subsequently signed the Consulting Agreement as of July 1, 2012, whereby Gould agreed to "consult with and advise the senior management of JP-USA on all aspects of strategic, management and operational matters for the benefit of JP-USA." Compl., Ex. A., Consulting Agreement, § 1. As Gould explains, the Consulting Agreement flowed directly from the relationship created between himself and JP-USA as a result of the SPA. Id. ¶¶ 11-13.

The Consulting Agreement references the SPA to define the term of the Consulting Agreement. Section 3 outlines the terms and conditions of Gould's compensation under the Consulting Agreement:

> 3. Compensation: In consideration of his rendering the Services to JP-USA, HEG shall be paid on an annual basis by JP-USA a sum equal to forty-nine percent (49%) of the Net Profit (as defined in this Section 3) . . . . For purposes of this Section 3, the term "Net Profit" shall be defined as the net operating income of JP-USA, as determined on an annual calendar year basis by its internal audit in the calculation format attached hereto as Exhibit "A" and incorporated herein by reference. Notwithstanding any contrary provision of this Agreement, (1) HEG shall not be entitled to any HEG Compensation if the Net Profit is negative; (2) the calculation of the HEG Share Price (as defined in the SPA) shall not include any consideration of the financial condition of JP-USA or any of the HEG Compensation, HEG's compensation hereunder being paid by JP-USA separate from and independent of

3

> the compensation that HEG is entitled to receive under the SPA upon the Stock Purchase Closing; and (3) nothing herein shall be construed as modifying or deemed to be a modification of the SPA or any agreement executed in connection with therewith, including, without limitation the HEG Employment Agreement.

Id., Ex. A, Consulting Agreement, § 3.  The Consulting Agreement contains no arbitration claims.

As a result of a number of disputes under the SPA and related agreements after the failure of mediation, on September 18, 2014, JP-USA filed the California Arbitration against Gould, pursuant to § 11.14.1.1 of the SPA.  Watanabe Decl. ¶¶ 6-7.  Among the claims asserted by JP-USA in the California Arbitration are claims (i) related to Gould's compensation in connection with the SPA, including that the "HEG Share Price" calculation, as that term is defined in the SPA, be strictly applied, and (ii) related to the amount of interest due from GPC to JP-USA pursuant to the credit agreement executed in connection with the transaction between Gould and JP-USA.  Id. ¶ 7.  Prior to responding to the arbitration demand in California, Gould filed his Complaint in this action on September 30, 2014.  Id. ¶ 8.  Gould has since filed his response and counterclaims in the California Arbitration.  Id.

4

In the instant Complaint, Gould alleges that JP-USA breached the Consulting Agreement by failing to pay him the full amount of "Net Profits" owed to him under the Consulting Agreement. Compl. ¶¶ 22-23. He acknowledges that JP-USA paid him $57,747 under the Consulting Agreement but argues that he was not paid "Net Profits" for "the partial calendar year of 2012 or the full calendar year of 2013." Id. ¶ 19. Gould has asserted two claims: (i) for breach of the Consulting Agreement, and (ii) for attorneys' fees pursuant to the terms of the Consulting Agreement.

The instant motion was heard and marked fully submitted on December 1, 2014.

**The Applicable Standard**

The arbitration provisions in the SPA are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Section 2 of the FAA provides that a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indisputably, the SPA concerns a transaction involving commerce, and, therefore, the FAA applies. See Watanabe Decl., Ex. 2,

5

SPA. Section 2 of the FAA further "requires courts to enforce [arbitration] agreements . . . according to their terms." CompuCredit Corp. v. Greenwood, 132 S. Ct. 665, 699 (2012) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see 9 U.S.C. § 2. It "is a congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The Second Circuit likewise recognizes the strong federal and state policy favoring arbitration. Ragone v. Atlantic Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010).

Section 2 creates "a presumption of arbitrability" and a rule that all "[d]oubts should be resolved in favor of [arbitration]." See AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986); Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. "The presumption in favor of arbitrability is greater when the arbitration clause, [as here], is broad." CPR v. Spray, No. 97 Civ. 6477 (RPP), 1998 WL 283285, at *1 (S.D.N.Y. June 1, 1998), aff'd sub nom., CPR (USA) Inc. v. Spray, 187 F.3d 245 (2d Cir. 1999), abrogated on other grounds by, Accenture LLP v. Spreng, 647 F.3d 72 (2d Cir. 2011). This presumption can only be overcome "if it may be said with positive assurance that the arbitration clause is not

6

susceptible of an interpretation that covers the asserted dispute." CPR (USA), 187 F.3d at 254.

The United States Supreme Court has held that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." Dean Witter Reynolds, Inc., 470 U.S. at 218. At the same time, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to arbitrate." Steelworkers, 363 U.S. at 582; Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-943 (1995). As the Second Circuit held in Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006), "which disputes are subject to arbitration are determined entirely by an agreement between the parties," and "[w]ithout the contract, the arbitration . . . never could exist."

The party resisting arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. Green Tree Fin. Corp.-Ala v. Randolph, 531 U.S. 79, 92 (2000). In determining this motion to compel arbitration, the Court must look at: (1) whether the

7

parties agreed to arbitrate; and (2) whether the scope of the arbitration provision covers Gould's claims.  Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003).

**The Consulting Agreement is Collateral to the SPA Arbitration Clause**

"'[A] collateral agreement is a separate, side agreement, connected with the principal contract which contains the arbitration clause.'"  High Falls Brewing Co., LLC v. Boston Beer Corp., 10-CV-6100, 2010 U.S. Dist. LEXIS 56601, at *25 (W.D.N.Y. June 8, 2010) (internal quotations and citations omitted).  When determining whether a particular dispute over a matter in a collateral agreement is covered by another agreement's arbitration clause, courts: (1) classify whether the arbitration clause is broad or narrow; (2) if the clause is narrow, determine whether the dispute is over an issue obviously within the purview of the clause; and, (3) if the clause is broad, determine whether the claims alleged regarding the separate agreement "'implicate[] issues of contract construction or the parties' rights and obligations under [the agreement with the arbitration clause].'"  See Louis Dreyfus Negroce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224, 228-29 (2d Cir. 2001) (quoting Collins & Aikman Prods. Co. v. Bldg. Sys.

8

Inc., 58 F.3d 16, 23 (2d Cir. 1995)). Generally, where the arbitration clause is broad, "'there arises a presumption of arbitrability.'" Id.

A clause referring to arbitration "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad [arbitration] clause." Collins & Aikman Prods. Co., 58 F.3d at 18, 20. The SPA's arbitration clause is almost identical to the arbitration clause in Collins. Watanabe Decl., Ex. 2, SPA, § 11.14.1.1 ("The Parties agree to submit any dispute, controversy or claim ("Dispute") arising out of, relating to or in any way connection [sic] with this Agreement to final and binding arbitration"). Accordingly, the SPA's arbitration clause is broad, and the presumption of arbitrability applies.

"'When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated.'" Dreyfus, 252 F.3d at 225 (quoting Geneseco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987)).

Under the Dreyfus test, Gould's claims under the Consulting Agreement "touch" the SPA and implicate issues of

9

contract construction and the parties' rights thereunder. Paragraph 3 of the Consulting Agreement, which along with Exhibit A to the Consulting Agreement is at the heart of the current dispute, provides that his payment under the Consulting Agreement will not be included within the calculation of the "HEG Share Price," as otherwise defined in the SPA. Id. § 3.

The calculation and application of the HEG Share Price under the SPA accounts for and excludes payments under the Consulting Agreement. Id.; Watanabe Decl., Ex. 2, SPA, § 6.01. In one claim in the California Arbitration, JP-USA seeks an order from the arbitrator directing that the HEG Share Price calculation be strictly applied. Watanabe Decl. ¶ 7.

A second claim in the California Arbitration is related to the amount of interest due from GPC to JP-USA pursuant to a credit agreement executed pursuant to the terms of the SPA, in connection with the transaction between Gould and JP-USA. Id. Gould contends in this action that he has not been fully compensated under the Consulting Agreement based, in part, on the fact that certain income of JP-USA, received in the form of interest from GPC pursuant to the credit agreement, was not included in the calculation of net profits setting Gould's compensation under the Consulting Agreement. Id. ¶ 5. Thus, a

determination in the California Arbitration of the correct amount of interest due will directly impact the determination of the correct amount of Gould's compensation under the Consulting Agreement.

Gould's characterization of the facts in his Complaint also supports the conclusion that the arbitration provision of the SPA should control. Specifically, Gould acknowledges that the Consulting Agreement grew out of the SPA. See Compl. ¶¶ 11-13. Because the Consulting Agreement fundamentally "touch[es] matters" within the SPA, its arbitration clause covers Gould's claims regarding the Consulting Agreement. Dreyfus, 252 F.3d at 225; High Falls Brewing Co., 2010 U.S. Dist. LEXIS 56601, at *24-25 (holding that agreements, if collateral, specifically implicated aspects of the main agreement and were arbitrable).

Finally, although the Consulting Agreement contemplates the possibility of "litigation or other proceedings," the "Miscellaneous" section does not preclude arbitration of Gould's claims. That section references "litigation or other proceedings" and deals with the distribution of attorneys' fees and costs, but does not address the appropriate forum or venue for resolving a dispute between the parties. Compl., Ex. A., Consulting Agreement, § 6. Where

11

there are two related agreements, one with an arbitration clause and the other with a different dispute resolution clause, the arbitration clause generally prevails over the other dispute resolution clause unless that clause precludes or prohibits arbitration. See High Falls Brewing Co., 2010 U.S. Dist. LEXIS 56601, at *26-29 (citing Bank Julius Baer & Co. v. Waxfield, Ltd., 424 F.3d 278, 283-284 (2d Cir. 2005)). As the "Miscellaneous" dispute resolution clause in the Consulting Agreement does not bar arbitration or designate a specific forum or venue for the resolution of disputes under the Consulting Agreement, Gould's claims will be arbitrated.

Gould has contended that his claims do not implicate any issues of construction of – or "touch" – the SPA (Pl.'s Opp'n 10), and that the Consulting Agreement's exclusionary reference to the SPA and the HEG Share Price, as defined in the SPA, means that his claim under the Consulting Agreement does not rely upon or require construction of the SPA. Id. However, there is an explicit reference to the SPA's terms in Section 3 of the Consulting Agreement, outlining what does and what does not constitute compensation for the purposed of the Consulting Agreement. See Compl., Ex. A., Consulting Agreement, § 2. This fact favors Defendant's motion.

Gould's claim in this action is also based, in part, on his contention that certain income of JP-USA, received in the form of interest from GPC pursuant to a collateral credit agreement, was not included in the calculation of Gould's compensation under the Consulting Agreement. Watanabe Decl. ¶ 5. As a result, proper calculation of Gould's compensation under the Consulting Agreement will impact and require interpretation of not only the SPA, but additional collateral agreements as well, all of which are already currently at issue in the California Arbitration because Gould's claim touches upon the SPA.

Gould relies on the holding in Rosen v. Mega Bloks, Inc., 06 Civ. 3474, 2007 WL 1958968 (S.D.N.Y. July 6, 2007). In Rosen, the court held ancillary employment agreements, which each contained arbitration provisions and were exhibits to a central stock purchase agreement, did not require arbitration of the plaintiff's claims under the stock purchase agreement. Id. at *6. The court noted that when determining whether a claim falls within the scope of an arbitration agreement, the court is to:

> [F]ocus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the

13

>     claims 'touch matters' covered by the
>     parties'. . . agreements, then those claims must
>     be arbitrated, whatever the legal labels attached
>     to them.

Id. at *8 (internal citations omitted).

The Rosen court found that the section of the employment agreements that was allegedly implicated by the plaintiff's claims, which referenced a section of the stock purchase agreement at issue, were not substantive, nor did they require the interpretation of the parties' rights and obligations under them. Id. at *9, 12. The Court explained that if the relevant section of the employment agreements made no mention of the stock purchase agreement, the parties' rights under the employment agreements would not need to be determined to decide the claims under the stock purchase agreement. Id. at *10.

Here, however, Consulting Agreement depends on contractual terms defined in the SPA, which are subject to interpretation and shape the calculation of compensation owed to Gould under the Consulting Agreement. Therefore, Gould's claims concerning that compensation must be arbitrated under the SPA's arbitration provision. Id.

14

Gould has also pointed to the broad arbitration provision in Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., 424 F.3d 278 (2d Cir. 2005), as distinguished from the arbitration provision in the SPA. Rather than relating merely to "disputes arising out of this Agreement," as Gould suggests, the arbitration provision of the SPA applies to any dispute, controversy or claim arising out of, relating to or in any way connected to the SPA. Watanabe Aff., Ex. 2, § 11.14.1.1. As set forth above, Gould's claims here are connected to the SPA.

Likewise, Gould seeks to distinguish Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218 (2d Cir. 2001) and High Falls Brewing Co., LLC v. Boston Beer Corp., No. 10-CV-6100, 2010 WL 2389168 (W.D.N.Y. June 9, 2010), by claiming that those cases dealt with contract construction of an agreement containing an arbitration clause. Pl.'s Opp'n 12-13. However, as set forth above, Gould's claims require construction of the SPA to define the scope of his compensation under the Consulting Agreement.

**Conclusion**

Based on the conclusions set forth above, the motion of JP-USA is granted. Gould is directed to arbitrate his claims and this action is dismissed with leave granted to renew without additional fees at the conclusion of the arbitration.

It is so ordered.

**New York, NY**
**February 11, 2015**

_____
ROBERT W. SWEET
U.S.D.J.